**Judith E. WORRELL–PAYNE, an individual, Plaintiff–Appellant,**

v.

**GANNETT CO., INC., a corporation, dba: The Idaho Statesman, Defendant–Appellee.**

No. 01–35112.

D.C. No. CV–98–0228–FLVS.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 11, 2002.

Decided Oct. 7, 2002.

able for decision without oral argument. See Fed. R.App. P. 34(a)(2).

Before REAVLEY,* TASHIMA, and RAWLINSON, Circuit Judges.

* The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

## MEMORANDUM **

Plaintiff–Appellant Judith E. Worrell–Payne ("Worrell–Payne"), the former executive director for the Boise City/Ada County Housing Authority (the "Authority"), brought suit against Defendant–Appellee Gannett Co., Inc. ("Gannett") for defamation, defamation by implication, intentional infliction of emotional distress, intentional interference with contract, intentional interference with prospective economic advantage, and invasion of privacy, based on a series of articles and editorials which appeared in Gannett's newspaper, *The Idaho Statesman* (*"The Statesman"*), from 1996 to 1998 and were sharply critical of her performance as executive director of the Authority. The district court's granted summary judgment in favor of Gannett on all of Worrell–Payne's claims. Worrell–Payne timely appeals. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## STANDARD OF REVIEW

We review the district court's grant of summary judgment de novo. *See Clicks Billiards Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir.2001). Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *See Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir.2002). Evidentiary rulings are reviewed for an abuse of discretion. *See Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir.2001).

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

## DISCUSSION

### I. Defamation and Defamation by Implication Claims

██ The district court properly concluded that Worrell–Payne was a "public official" during the time of the publications.[1] In her role as executive director of the Authority, Worrell–Payne acted as its representative, was responsible for the oversight of its budget, managed its employees, applied for private and public funds, and monitored its compliance with applicable rules and regulations. Worrell–Payne concedes that she is a "public figure" for purposes of this appeal.

To succeed on her claim of defamation, Worrell–Payne must therefore show that the statements in question were made with "actual malice," i.e., with actual knowledge of their falsity or reckless disregard for their truth or falsity. *See Harte–Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 659, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989). The appropriate question at summary judgment is "whether a reasonable jury could find, by clear and convincing evidence, that [Worrell–Payne] has shown [that Gannett published defamatory falsehoods with] actual malice." *Kaelin v. Globe Communications Corp.*, 162 F.3d 1036, 1039 (9th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–56, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "A failure to set forth specific facts showing such malice is a proper ground for summary judgment." *Solano v. Playgirl, Inc.*, 292 F.3d 1078, 1084 (9th Cir.2002) (citing *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1195 (9th Cir.1989)).

Worrell–Payne also alleges that many of *The Statesman*'s articles defamed her by implication. Assuming arguendo that Idaho recognizes the tort of "defamation by implication," Worrell–Payne must show that: (1) the statements made by *The Statesman* were "reasonably capable of sustaining" a factually incorrect and defamatory meaning, and (2) "a jury could reasonably find by clear and convincing evidence that [*The Statesman*] 'intended to convey the defamatory impression.'" *Dodds v. Am. Broad. Co.*, 145 F.3d 1053, 1063–64 (9th Cir.1998) (quoting *Newton v. Nat'l Broad. Co.*, 930 F.2d 662, 681 (9th Cir.1990)).[2] The second prong of this test "is the well known 'actual malice' requirement" from *New York Times*, 376 U.S. at 279–80, 84 S.Ct. 710. *See Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 848 n. 18 (9th Cir.2001) (citing *Newton*, 930 F.2d at 681–83).

The bulk of Worrell–Payne's defamation and defamation by implication claims are based on *The Statesman*'s multiple articles and editorials reporting that she was either "accused of," faced "allegations" or "charges" of, or was "fired amid" allegations of nepotism, frequent absenteeism, and mismanagement.[3] Her main conten-

---

1. Because management of the Authority and other housing authorities was "still a matter of lively public interest; propositions for further change were abroad, and public interest in the way in which the prior administration had done its task continued strong," her status for the purposes of the rule of *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), for statements involving these matters did not change after her termination or the passage of two years. *See Rosenblatt v. Baer*, 383 U.S. 75, 87 & n. 14, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966);

*Partington v. Bugliosi*, 56 F.3d 1147, 1152 n. 8 (9th Cir.1995).

2. The Supreme Court of Idaho has not yet decided whether Idaho recognizes the tort of "defamation by implication." Because Worrell–Payne's "defamation by implication" claim fails on the merits, we do not need to decide this issue.

3. Because the parties are familiar with the complex facts set forth in the dozens of articles at issue in this case, we do not recite

tion is that statements she made in her own defense at a press conference, the contents of a "corrective" information packet she provided to reporters, and other responses she gave to reporters at *The Statesman* should have made it obvious to them that the statements being made in its articles and editorials about her were false and that Gannett therefore acted with actual malice when it continued to report on the accusations.

■ Despite Worrell–Payne's denial of any wrongdoing and claims that she followed the appropriate procedures, however, her defamation and defamation by implication claims must fail. *The Statesman* provided the essential facts upon which the reported allegations of "nepotism," "favoritism," and "mismanagement" were based. Furthermore, it did not ignore Worrell–Payne's response to these claims or engage in "purposeful avoidance of the truth" when it had "obvious reasons to doubt the veracity of its reporting." *Eastwood v. Nat'l Enquirer, Inc.*, 123 F.3d 1249, 1251 (9th Cir.1997) (citations and internal quotation marks omitted).

In fact, on more than one occasion, the articles included Worrell–Payne's asserted denials, which consisted primarily of the assertions that she had followed the correct procedures, had gotten approval from the Authority's Board of Commissioners (the "Board") for the actions, and had not given any friends or family members preferential treatment when they obtained certain benefits from the Authority questioned by the articles. Because these denials did not prove the falsity of the essential facts upon which the stories were based, the statements themselves, or the impressions being reported,[4] Worrell–Payne is unable to meet her burden of demonstrating that a jury could reasonably find by "clear and convincing evidence" that *The Statesman* "in fact entertained serious doubts as to the truth of" or acted with a "high degree of awareness of ... probable falsity" of the statements it published regarding the allegations of nepotism, the impression that she was guilty of nepotism and favoritism, the allegations of mismanagement, or the reporting of the factual claims related to the allegations of mismanagement, such as her handling of the wrongful dismissal suit, the rent payments included in the employee compensation package, the rent-to-own housing program, her failure to apply for a federal grant, and the extensive amount of travel she did on the job. *See Kaelin*, 162 F.3d at 1041–42; *Harte–Hanks*, 491 U.S. at 688, 109 S.Ct. 2678.

Worrell–Payne further contends that *The Statesman*'s allegations that she had been accused of "frequent absenteeism," "excessive absenteeism," and "frequent absences" clearly conveyed the false impression that she was frequently not on the job, a fact that she claims is provably false because, even though she was frequently away from her office, she spent that time working at other locations. While the articles did not always specify the facts upon which the reported "absenteeism" allegation was being made, Worrell–Payne again failed to present clear and convincing evidence which would permit a jury reasonably to find "actual malice." The use of the term "absenteeism" was not a clearly false or misleading way to describe the

---

them here, except as necessary to explain our reasoning.

4. For example, actions such as the purchase of a $25,000 government-owned Chevrolet Blazer for Worrell–Payne's personal and pro-

fessional use or an $83,567 annual travel budget can be criticized as extravagant, excessive, or an abuse of her position as executive director of the Authority, regardless of whether they were approved by the Board.

fact that Worrell–Payne was frequently "absent" from the Boise office when she consulted on housing matters in other cities, a part of her job that she had initiated and of which some critics did not approve. Moreover, some of the articles clarified the meaning of the "absenteeism" charge by stating that her weekly absences from Boise were caused by her out-of-town work.

Gannett also has a further defense to the defamation claims, based on additional statements in which the "substance or gist" is true.[5] *See Baker v. Burlington North., Inc.,* 99 Idaho 688, 587 P.2d 829, 831 (Idaho 1978) ("In a slander or libel suit it is not necessary for the defendant to prove the literal truth of his statement in every detail, rather it is sufficient for a complete defense if the substance or gist of the slanderous or libelous statement is true."). Finally, we also conclude that none of Worrell–Payne's remaining claims of defamation and defamation by implication, even those which suggest that some errors of fact may have been made due to negligence, present evidence of "actual malice" sufficient to defeat Gannett's motion for summary judgment. *See Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 510, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991) (stating that "[m]ere negligence does not suffice" to establish actual malice).

## II. Other Torts

Because Worrell–Payne cannot show that "the publication contains a false statement of fact which was made with 'actual malice,'" her claim for intentional infliction of emotional distress must fail as well. *Hustler Magazine v. Falwell,* 485 U.S. 46, 56, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988). Worrell–Payne's false light invasion of privacy claims also fail for the same reason. *See Leidholdt v. L.F.P. Inc.,* 860 F.2d 890, 893 (9th Cir.1988); *Dworkin,* 867 F.2d at 1193 & n. 3. Moreover, in light of Worrell–Payne's continuing status as a "public figure" and a "public official," her further contention that Gannett invaded her privacy with respect to a private matter also must fail because she cannot establish that the facts disclosed were "entitled to be private." *Hoskins v. Howard,* 132 Idaho 311, 971 P.2d 1135, 1141 (1998).

The tort of intentional interference with prospective economic advantage requires a showing that the interference the defendant is alleged to have committed "was wrongful by some measure beyond the fact of the interference itself (i.e., that the defendant interfered for an improper purpose or improper means)." *Highland Enters., Inc. v. Barker,* 133 Idaho 330, 986 P.2d 996, 1004 (1999). Worrell–Payne has failed to make such a showing. *Cf. Unelko Corp. v. Rooney,* 912 F.2d 1049, 1058 (9th Cir.1990) (holding that claim for tortious interference with business relationships is subject to the same First Amendment requirements that govern defamation claims). Worrell–Payne has similarly failed to make out a prima facie case of interference with contract because she has failed to adduce any evidence that *The Statesman's* "interference" caused the breach of contract. The Authority itself represented that the media's coverage of Worrell–Payne was not the reason for her termination. *See Barlow v. Int'l Harvester Co.,* 95 Idaho 881, 522 P.2d 1102, 1114 (1974). Thus, proof of causation is lacking.

---

**5.** These statements include the description of the Authority during Worrell–Payne's tenure as "scandal-plagued" or "rocked" by "scandals or controversies," the claim that there were "charges" of mismanagement, nepotism, and absenteeism, and the statements regarding the $300,000 settlement of the wrongful dismissal suit.

### III. Exclusion of Expert Testimony

Finally, Worrell–Payne contends that the district court erred by failing to consider her motion for relief from an order striking her expert's affidavit and report.[6] Even assuming *arguendo* that the district court abused its discretion in excluding the journalism expert's affidavit and report, because this material has little relevance to the "actual malice" issue, we conclude that any such error was harmless and does not warrant a reversal. *See Harte–Hanks*, 491 U.S. at 665–66, 109 S.Ct. 2678 (noting the Court's rejection of the "professional standards rule" for "actual malice" and recognizing that more than an "extreme departure from professional standards" must be shown to provide a sufficient basis for a finding of "actual malice" in a case involving a public figure plaintiff); *Eastwood*, 123 F.3d at 1251 (stating that neither "mere negligence" nor "an extreme departure from accepted professional standards of journalism ... or any other departure from reasonably prudent conduct, including the failure to investigate before publishing," will "suffice to establish actual malice").

### CONCLUSION

For the foregoing reasons, the judgment of the district court is

**AFFIRMED.**

---

**6.** Gannett has moved on appeal to strike the same affidavit and report from Worrell–Payne's brief and excerpts of record. In light of our disposition, the motion is denied as moot.

