971 P.2d 1135

**Sandy HOSKINS and Tony Lamanna, Plaintiffs–Appellants,**

v.

**Robert HOWARD, individually, and as Deputy Sheriff of Bonner County, and Linda Howard, and John Does I through V, Defendants–Respondents.**

No. 23755.

Supreme Court of Idaho.
Coeur d'Alene, September, 1998 Term.

Dec. 4, 1998.
Rehearing Denied Feb. 24, 1999.

Scott W. Reed, Coeur d'Alene, for appellants.

Lukins & Annis, Coeur d'Alene, for respondents. Susan P. Weeks argued.

TROUT, Chief Justice.

In this case we decide whether the Idaho Communications Security Act (ICSA) protects cordless telephone communications. The ICSA protects Idahoans against the willful interception of wire and oral communications and gives those injured a private right of action for damages. I.C. § 18–6709. Those violating the provisions of the ICSA also face criminal sanctions, and no evidence obtained in violation of the Act is admissible in a court of law. I.C. § 18–6705.

## I.

### BACKGROUND

In July 1993, Robert Howard (Robert), a deputy for the Bonner County Sheriff's Department borrowed a radio scanner from work. He took it home to become more familiar with its functions and to identify certain frequencies. Sometime during that month Robert and his wife, Linda, used the scanner to listen to a cordless telephone conversation between their neighbor Sandy Hoskins (Hoskins) and Hoskins' friend, Tony Lamanna (Lamanna). In that conversation Hoskins and Lamanna allegedly threatened to kill Linda.

Robert took the tape to his employer, Sheriff Chip Roos along with a written explanation of how he had obtained the recording. Sheriff Roos listened to the tape and informed the county prosecutor of its contents for the purpose of determining whether criminal action should be taken against Hoskins

and Lamanna. The prosecutor advised Sheriff Roos that the recording was illegal and inadmissible as evidence of a crime. Sheriff Roos returned the tape to Robert along with a written warning stating that it was department policy not to "intrude improperly into the private lives of the citizens that we are here to protect."

Hoskins learned of the recording in August 1993. She wrote a complaint letter to Sergeant Robert Lindstrom. Sergeant Lindstrom questioned Robert and Sheriff Roos about the recording. In his response letter to Hoskins, Sergeant Lindstrom indicated that Sheriff Roos knew nothing of the recording. Lindstrom added that Robert had assured him that "he [Robert] is not engaged in any activity such as recording telephone calls." Sheriff Roos later circulated a memorandum stating that it was department policy not to use scanners to monitor private telephone conversations. In March 1994, as part of an ongoing investigation into the Bonner County Sheriff's Department by the Idaho Bureau of Investigation (IBI), Special Investigator David Doorman interviewed Robert concerning the recording. In his written report, Doorman referred to the contents of the recording, specifically the alleged murder plot. Subsequently, a local radio station received a copy of the IBI report and used it to broadcast a news story involving the alleged conspiracy.

Hoskins and Lamanna initially brought an action in federal district court against Robert and Linda (the Howards) alleging violations of Title III of the federal Omnibus Crime Control and Safe Streets Act of 1968 as amended by the Electronic Communications Privacy Act of 1986. Judge Boyle granted the Howards' motion for summary judgment dismissing the federal claim with prejudice. Hoskins and Lamanna then pursued this action in state court, filing a complaint on September 20, 1996, alleging invasion of privacy and violations of the Idaho Communications Security Act. They asked for separate monetary relief on each count. On January 2, 1997, Hoskins and Lamanna filed a partial motion for summary judgment on the statutory claim. The Howards responded with their own motion for summary

judgment filed February 5. After hearing oral arguments on both motions on March 5, 1997, the district judge denied Hoskins and Lamanna's motion, granted the Howards' motion, and dismissed the case. The district judge ruled from the bench that the Idaho Communications Security Act cannot be construed to protect cordless telephone conversations under any circumstances. The judge also summarily ruled that no cause of action for invasion of privacy existed under the circumstances. This appeal ensued.

## II.

### STANDARD OF REVIEW

Our review of a district judge's ruling on a motion for summary judgment is the same as that required of the district judge when ruling on the motion. *Friel v. Boise City Hous. Auth.*, 126 Idaho 484, 887 P.2d 29 (1994). Pursuant to I.R.C.P. 56(c), summary judgment must be entered when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c). As when the motion is initially considered by the trial court, this Court, on review, liberally construes the record in favor of the party opposing the motion and draws all reasonable inferences and conclusions in that party's favor. *Farm Credit Bank of Spokane v. Stevenson*, 125 Idaho 270, 869 P.2d 1365 (1994). If we determine reasonable people could reach different conclusions or draw conflicting inferences from the evidence, we will deny the motion. *Id.* at 272, 869 P.2d at 1367. However, if the evidence reveals no disputed issues of material fact, only a question of law remains, and this Court exercises free review. *Id.*

## III.

### THE IDAHO COMMUNICATIONS SECURITY ACT

Hoskins and Lamanna argue that the district judge erred in granting summary judgment dismissing their claim under the ICSA. They argue that their cordless telephone con-

versation was protected under the Act. Idaho Code § 18–6702 provides criminal penalties for any person who (1) willfully intercepts any wire or oral communication or (2) willfully discloses to any other person the contents of any wire or oral communication, knowing or having reason to know that the information was obtained in violation of the ICSA. Section 18–6709 provides a private right of action against individuals who violate the above provisions. A person can recover actual damages not less than liquidated damages computed at one hundred dollars per day of each violation or one thousand dollars, whichever is greater. The section also allows for punitive damages and recovery of reasonable attorney fees. I.C. § 18–6709. Idaho Code § 18–6701 provides the following definitions:

(1) "Wire Communication" means any communication made in whole or in part through the use of facilities for the transmission of communication by the aid of wire, cable, or other like connection between the point of origin and the point of reception, furnished or operated by any person engaged as a common carrier in providing or operating such facilities for the transmission of intrastate, interstate or foreign communications.

(2) "Oral communication" means any oral communication uttered by a person under circumstances justifying an expectation that said communication is not subject to interception.

(3) "Intercept" means the aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device.

(4) "Electronic, mechanical, or other device" means any device or apparatus which can be used to intercept a wire or oral communication other than:

(a) Any telephone or telegraph instrument, equipment or facility or any component thereof furnished to the subscriber or user by a communications common carrier in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business, or being used by a communications common carrier in the ordinary course

of its business, or by an investigative or law enforcement officer in the ordinary course of his duties;

(b) A hearing aid or similar device being used to correct subnormal hearing to not better than normal.

I.C. § 18–6701.

■ The Howards admit that they used a radio scanner to listen to a cordless telephone conversation between Hoskins and Lamanna. They also admit to recording the conversation on a small tape recorder and giving that tape to Sheriff Roos. The scanner and tape recorder used to intercept and record the conversation fall under the category, "electronic, mechanical, or other device." Consequently, the Howards intercepted and disclosed Hoskins and Lamanna's cordless telephone conversation leaving only one issue in determining whether the district judge properly granted the Howards' motion for summary judgment on the ICSA claim. That is, whether cordless telephone conversations are protected wire or oral communications under the ICSA.

Hoskins and Lamanna argue that their conversation was a protected wire or oral communication, and that the district judge erred in finding that under no circumstances are cordless telephone communications protected under the ICSA. The ICSA protects wire communications. By statutory definition, wire communications include those which "in whole or *in part*" are transmitted through wire, cable, or other like connection of the state's telecommunication network. I.C. § 18–6701(1) (emphasis added). Only a few Idaho cases have addressed the ICSA. *State v. Wilkins,* 125 Idaho 215, 868 P.2d 1231 (1994); *State v. Kluss,* 125 Idaho 14, 867 P.2d 247 (Ct.App.1993); *State v. Thompson,* 114 Idaho 746, 760 P.2d 1162 (1988); *State v. Thompson,* 113 Idaho 466, 745 P.2d 1087 (Ct.App.1987). While these cases may provide guidance in interpreting the Act, not one addresses the issue of whether cordless telephone conversations are protected wire communications.

■ Federal statutes on the subject of electronic surveillance do not preempt all state regulation. They merely establish a

minimum level of protection, and states are free to provide more. *United States v. McKinnon*, 721 F.2d 19, n. 1 (1st Cir.1983). Further, when legislation, like the ICSA, is adopted from another jurisdiction, this Court presumes that it is adopted with the "prior construction placed upon it by the courts of such other jurisdiction." *Nixon v. Triber*, 100 Idaho 198, 200, 595 P.2d 1093, 1095 (1979). The ICSA is patterned, in part, after the federal Omnibus Crime Control and Safe Streets Act of 1968. *Compare* I.C. §§ 18–6701 to 6725 *with* the Omnibus Crime Control and Safe Streets Act of 1968, Tit. III, sec. 802, 82 Stat. 112, 212–226 (1968). Seven years before the ICSA became law in Idaho, the Ninth Circuit, in construing the federal act, held that so long as the nation's telecommunication system is utilized, the radio portion of a car telephone conversation is a protected wire communication where the other party to the conversation is using a regular land-line telephone. *United States v. Hall*, 488 F.2d 193 (9th Cir.1973). No other reported federal or state case presented that issue between 1973 and 1980. When enacting the ICSA, we presume that the Idaho Legislature was aware of this interpretation and would have modified the statute if such communications were not to be covered.

■ Moreover, under this Court's rules of statutory construction, a statute must be "construed so that effect is given to its provisions, and no part is rendered superfluous or insignificant." *Petersen v. Franklin County*, 130 Idaho 176, 181, 938 P.2d 1214, 1219 (1997). The Legislature's intent, when clearly expressed in the language of the statute, must be given effect, and there is "no occasion for construction where the language of a statute is plain and unambiguous." *State v. McCoy*, 128 Idaho 362, 365, 913 P.2d 578, 581 (1996). When interpreting a statute, the Court must first scrutinize the literal words of the statute. *Matter of Permit No. 36–7200*, 121 Idaho 819, 823, 828 P.2d 848, 852 (1992). Words must be given their plain, usual, and ordinary meaning, and "the statute must be construed as a whole." *Id.*

■ The Idaho definition of wire communication plainly includes "*any* communication made in whole or *in part* through the use" of the state's or nation's telecommunications system. I.C. § 18–6701(1).[1] By its own terms this definition is broad. Unless this Court also finds cordless telephone conversations to be wire communications, the "any communication" and "in whole or in part" language would be rendered meaningless. Therefore, we find that cordless telephone communications are protected wire communications under the ICSA so long as some portion of the communication travels through the state's or nation's telecommunications network as required by I.C. § 18–6701(1). Viewing the facts in a light most favorable to Hoskins and Lamanna, the Howards, by their own admissions, used a radio scanner to intercept a wire communication. Acting willfully, they recorded this communication and disclosed it to others. Consequently, the district judge erred in granting summary judgment in favor of the Howards. Because we find that cordless telephone communications are protected wire communications, further inquiry into whether such communications may also be protected oral communications is not necessary.

## IV.

## HOSKINS AND LAMANNA'S PARTIAL MOTION FOR SUMMARY JUDGMENT

■ Hoskins and Lamanna raise the issue of whether the district judge erred in deny-

1. A number of federal and state decisions, relied upon by the Howards, hold that cordless telephone conversations are not wire communications under definitions similar to I.C. § 18–6701(1). *See Tyler v. Berodt*, 877 F.2d 705, 706 (8th Cir.1989); *Edwards v. Bardwell*, 632 F.Supp. 584, 589 (M.D.La.1986); *State v. Delaurier*, 488 A.2d 688, 694 (R.I.1985); *State v. Howard*, 235 Kan. 236, 679 P.2d 197, 204 (Kan.1984); *State v. Smith*, 149 Wis.2d 89, 438 N.W.2d 571, 577 (Wis.1989); *State v. King*, 873 S.W.2d 905, 909 (Mo.App.1994). However, each of these deci-

sions fail to express what Congress or their state legislatures meant by the phrase "in whole or in part."

Like the Ninth Circuit, a number of state courts have focused on the "in whole or in part" language to reach the conclusion that cordless telephone conversations are protected wire communications. *See People v. Fata*, 159 A.D.2d 180, 185, 559 N.Y.S.2d 348, 351 (N.Y.App.Div.1990); *State v. McVeigh*, 224 Conn. 593, 620 A.2d 133, 148 (Conn.1993); *State v. Bidinost*, 71 Ohio St.3d 449, 644 N.E.2d 318, 328 (Ohio 1994).

ing their partial motion for summary judgment on their ICSA claim. As indicated in the previous section of this opinion, there is no genuine issue of fact relating to the Howards' conduct or intentions. Because this Court has found cordless telephone conversations to be protected wire communications under the ICSA, the district judge erred in denying Hoskins and Lamanna's partial motion for summary judgment on their ICSA claim.

## V.

## INVASION OF PRIVACY

Hoskins and Lamanna argue that by intercepting, listening, recording, and disclosing their cordless telephone conversation, the Howards are liable under state tort law for invasion of privacy. They contend that the district judge erred in granting summary judgment dismissing this claim. The Howards argue that, because Hoskins and Lamanna had no reasonable expectation of privacy in the cordless telephone conversation, they failed to state a claim for invasion of privacy and the district judge correctly granted their motion for summary judgment.

This Court has recognized an action for invasion of privacy. *See, e.g., Peterson v. Idaho First Nat'l Bank,* 83 Idaho 578, 367 P.2d 284 (1961); *Baker v. Burlington N.,* 99 Idaho 688, 587 P.2d 829 (1978); *O'Neil v. Schuckardt,* 112 Idaho 472, 733 P.2d 693 (1986). A claim for invasion of privacy falls into one or more of four categories:

1. Intrusion upon the plaintiff's seclusion or solitude, or into his private affairs.
2. Public disclosure of embarrassing private facts about the plaintiff.
3. Publicity which places the plaintiff in a false light in the public eye.
4. Appropriation, for the defendant's advantage, of the plaintiff's name and likeness.

*Baker,* 99 Idaho at 691, 587 P.2d at 832. Hoskins and Lamanna allege that the Howards' conduct in intercepting, recording, and disclosing their cordless telephone conversation gives rise to a cause of action under the first three categories. The interception and recording constituted an intrusion upon their seclusion or solitude, or private affairs. The disclosure of the recording to Sheriff Roos and the prosecuting attorney was a public disclosure of private facts. Hoskins and Lamanna contend that the Howards put a "gloss" on the recorded conversation to create a conspiracy between the two to kill Linda. Consequently, the disclosure of the interceptions to the IBI with the characterization of the conversation as a conspiracy to "blow away" Linda Howard placed Hoskins and Lamanna in a false light.

The Howards contend first that the conversation between Hoskins and Lamanna was not private since it was broadcast by radio waves from the cordless telephone for all within range to overhear on a scanner. Further, the Hoskins—Lamanna conversation was a matter of public concern since it involved a potential murder plot.[2] Consequently, the Howards argue that categories one and two cannot be met. As for the false light allegation, the Howards contend this category is inapplicable since Hoskins and Lamanna failed to allege libel or slander.

### A. False Light

■ As for the third category, publicity which places the plaintiff in a false light in the public eye, "the precise elements of this cause of action are unclear." *Baker,* 99 Idaho at 691, 587 P.2d at 832. However, this Court noted that there must be some "public disclosure of falsity or fiction concerning the plaintiff." *Id.* Recovery may not be had where the publication is free from material falsehood. *Id.* The Howards contend the disclosure was true. Hoskins and Lamanna, as noted above, claim that no reasonable

---

**2.** In arguing that alleged criminal activities are of public concern, the Howards rely on *Taylor v. K.T.V.B.,* 96 Idaho 202, 525 P.2d 984 (1974) and *Baker v. Burlington Northern.* In *K.T.V.B.* this Court noted that persons **charged** with crimes are the "objects of legitimate public interest during a time after their conduct has brought them

to public attention." *K.T.V.B.* at 205, 525 P.2d at 987. This Court in *Baker* followed this reasoning in finding that disclosure of the plaintiff's recent criminal conviction is not a disclosure of private facts. Neither seem to directly support Howards' assertion that **alleged,** but uncharged, criminal activities are of public concern.

person could have interpreted the conversation as a death threat. The fact remains, however, that the conversation did include comments concerning Linda's death and even included a potential scenario to carry out that threat. Even taking a position in a light most favorable to Hoskins and Lamanna, nothing in the record indicates that any publication of the conversation was materially false. Further, Hoskins and Lamanna claim, in their brief, that it was the disclosure of the tape to the IBI and the disclosure of the IBI report to the media which placed Hoskins and Lamanna in a false light. It seems that the Howards are not the proper defendants for an action under this category. Assuming these actions could give rise to an action for false light, the Howards did not initiate the IBI investigation, nor did they give the IBI report to the radio station. Consequently, Hoskins and Lamanna have failed to raise a genuine issue of material fact as to their claim for false light and the district judge was correct in granting summary judgment as to that portion of the invasion of privacy claim.

### B. Intrusion into Solitude or Seclusion and Public Disclosure of Private Facts

 In regard to the first category, this Court in *O'Neil* noted that an intrusion upon one's solitude or seclusion or private affairs may occur without a physical invasion, "for example, as by eavesdropping by means of wire-tapping ... [but] that which is intruded into must be, and be entitled to be, private." *O'Neil,* 112 Idaho at 477, 733 P.2d at 698. To be actionable, the prying or intrusion into the plaintiff's private affairs must be of a type which is offensive to a reasonable person. *See* W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 117 at 854–55 & n. 4 (5th ed.1984). As for the second category, public disclosure of embarrassing private facts about the plaintiff, this Court has noted that "certain limits appear fairly well marked out." *Peterson,* 83 Idaho at 583, 367 P.2d at 287. First, there must be a public disclosure. Second, the facts disclosed must be entitled to be private. Third, public disclosure must be such that it is offensive and objectionable to a reasonable person. *Id.*

 To establish a claim for public disclosure of private facts or intrusion into solitude or seclusion, the areas intruded upon must be, and be entitled to be, private. *O'Neil,* 112 Idaho at 477, 733 P.2d at 698. Thus, for a conversation to be entitled to privacy, the speaker must have a subjective expectation that the conversation will remain private. That expectation must also be one which society is willing to accept as reasonable. In other words that expectation of privacy must be objectively reasonable under the circumstances.[3]

 In granting the Howards' motion for summary judgment, the district judge implicitly found that Hoskins and Lamanna failed

---

3. The vast majority of federal and state cases on point have found a cordless telephone user has no reasonable expectation of privacy. *See McKamey v. Roach,* 55 F.3d 1236, 1239–40 (6th Cir. 1995) (scanner used to intercept cordless telephone conversation); *United States v. Smith,* 978 F.2d 171, 180–81 (5th Cir.1992) (radio scanner to listen to cordless telephone conversation); *Tyler v. Berodt,* 877 F.2d 705, 706 (8th Cir.1989) (cordless telephone used to listen to another cordless telephone conversation); *United States v. Carr,* 805 F.Supp. 1266, 1271 (E.D.N.C.1992) (radio scanner used to listen to cordless telephone conversations); *Edwards v. Bardwell,* 632 F.Supp. 584, 589 (M.D.La.1986) (radio scanner used to listen to car telephone conversation); *State v. King,* 873 S.W.2d 905, 909 (Mo.App. 1994) (radio scanner used to listen to cordless telephone conversations); *State v. Delaurier,* 488 A.2d 688, 694 (R.I.1985) (standard AM radio used to listen to cordless telephone conversations); *State v. Howard,* 235 Kan. 236, 679 P.2d 197, 206 (Kan.1984) (AM/FM radio used to listen to cordless telephone conversations). Each of the cases above, with the exception of *Smith,* focus on the fact that cordless telephone conversations can be easily picked up on an AM/FM radio, another cordless telephone, or can be heard on a commercially available radio scanner like the one used by the Howards. Consequently, those courts hold cordless telephone users can never reasonably expect their conversations to be private.

Because the question of whether a person using a cordless telephone has a reasonable expectation of privacy depends upon the particular circumstances, it is incorrect to state that under no circumstances can her communication be private. As the Fifth Circuit noted in *United States v. Smith,* the case may arise where the particular cordless telephone is sophisticated enough to warrant a legitimate expectation of privacy. *Smith,* 978 F.2d at 180.

to establish a legitimate expectation of privacy. When enacting the ICSA, the Idaho Legislature chose to protect cordless telephone communications from prying ears. The ICSA provides a statutory version the of exclusionary rule and sets criminal penalties for violating its provisions. In light of the ICSA, Hoskins and Lamanna raised a genuine issue as to whether they had a legitimate expectation that their conversation would remain private.

Viewing the record in a light most favorable to Hoskins and Lamanna, the Howards intruded into their private conversation, recorded that conversation, and made a public disclosure of that recording. That private conversation is one which the legislature at least has recognized should remain private and unintercepted. Therefore, the district judge erred in granting the Howards' motion for summary judgment on Hoskins' and Lamanna's claims for intrusion into solitude or seclusion and public disclosure of private facts.

## VI.

### CONCLUSION

For the reasons stated above, the district judge's grant of the Howards' motion for summary judgment and the denial of Hoskins and Lamanna's partial motion for summary judgment on the ICSA claim are vacated and the case is remanded to the district judge for further proceedings consistent with this opinion. Costs are awarded to Hoskins and Lamanna pursuant to I.A.R. 40.

Justices JOHNSON, SILAK, SCHROEDER and WALTERS, CONCUR.